No. 33,226

*In re* DISBARMENT PROCEEDINGS AGAINST S. L. LASHBROOK.

No. 33,227

*In re* DISBARMENT PROCEEDINGS AGAINST GEORGE J. LITTLE.

(73 P. 2d 1106)

Opinion filed December 11, 1937.

*Clarence V. Beck,* attorney general, *Theo. F. Varner,* assistant attorney general, and *T. M. Lillard,* of Topeka, for the complainant.

*Lester Goodell* and *Edward Curry,* both of Topeka, for respondent S. L. Lashbrook.

*C. E. Carroll,* of Alma, for respondent George J. Little; *George J. Little,* of Topeka, *pro se.*

The opinion of the court was delivered by

HUTCHISON, J.: Two separate accusations in disbarment proceedings were filed in this court on July 20, 1936, by the state board of law examiners, one against S. L. Lashbrook and the other against George J. Little, both attorneys at law and admitted to practice law in all the courts of Kansas, and both residents of Topeka, Shawnee county, Kansas. They were each accused of stirring up litigation and directly and indirectly soliciting clients, in violation of rule 28 of the canons of professional ethics, adopted by the American Bar Association and the Kansas Bar Association, and also of dividing fees for the rendition of legal services with those not lawyers, in violation of rule 34 of the canons of professional ethics, adopted by both the above-named bar associations. Both accusations charged

the commission of unethical professional conduct in violation of the above-named rules with the same proposed litigation and growing out of the same business transaction.

Each of the accused filed a separate response or answer to the accusation against him, including therein general and special denials of the charges. This court, on October 19, 1936, appointed the Hon. A. M. Johnston, of Manhattan, Kan., commissioner in each case for the purpose of hearing the evidence and making findings of fact and conclusions of law. The cases were by agreement heard together, and the commissioner on June 4, 1937, filed a written report in each case, finding and concluding in each case that the respondent had violated rules 28 and 34 and ought to be disbarred. The board of law examiners, together with the attorney general, filed a motion to confirm the commissioner's report in each case, and the respondents each filed separate exceptions to the report, and prayed that the report be not approved and that the respondent be discharged.

The record shows that these accusations arose out of a serious difference between the Security Benefit Association, a fraternal insurance organization, and a number of its aged members and ex-members, over the matter of the association's having amended its by-laws so as to greatly increase the monthly premiums on the life insurance policies carried by these aged members. The allegations of the accusations are specific and definite in charging both these respondents with stirring up litigation between some of these aged members and ex-members of said association and the association, and soliciting these aged members and ex-members as clients and receiving as attorney fees a part of the money paid by them to promote such litigation. The accusations also charge in connection with such solicitation and division of fees, the employment by the respondents of A. J. Meyer and J. M. Auld as agents to make such solicitation of members and former members of the association to become clients of the respondents, and that such agents did solicit such members and ex-members to become clients of these respondents, and that these agents collected from these members and ex-members so agreeing to become clients the sum of $5 each, and gave part of it to the respondents for attorney fee and retained the balance of it for their own services and expenses. The accusations further charge that such solicitations were made with the knowledge, consent and connivance of the respondents. The second accusation

is concerning the contacting of one G. L. Icenogle by respondents and A. J. Meyer for the purpose of soliciting funds from such members and ex-members, and the third accusation is concerning the soliciting of clients by respondent Little in Wichita.

The findings of the commissioner are very complete and exhaustive, but nowhere therein is there a definite finding of what is presented as the main connection between the respondents and the members or ex-members by and through their alleged agents, Meyer and Auld. These parties are not found to have been agents of the respondents by the commissioner. The nearest approach thereto is in the last finding but one, where it is said that the respondents violated rule 28 by employing agents for the purpose of securing clients. Neither was the name of Icenogle mentioned in any of the findings. In fact, there is no finding concerning either Auld or Icenogle. There are findings that solicitations were made with the knowledge, consent and connivance of the respondents, and they were sufficient to support the conclusion of law made by the commissioner.

We have before us not only an abstract and a counter abstract of the evidence, but also the complete transcript of all the evidence introduced or offered on the hearing, as well as substantially all of the exhibits introduced or offered in evidence. A part of the strongest evidence against the respondents is shown by the record not to have been procured by the board of law examiners, the attorney general or the grievance committee of the local bar association, but was procured by parties shown by the record to have had an adverse interest in the proposed litigation and a grievance on account thereof, which situation should properly reduce the weight to be given to testimony thus procured.

The record shows that after the increase of premiums by the Security Benefit Association for aged members of the association, A. J. Meyer, whose mother was a policyholder in said association, and for whom he had been making for some time the monthly premium payments, went to respondent Lashbrook to inquire as to his mother's legal rights and as to what course to pursue. Respondent Lashbrook referred the legal question to respondent Little, who, after making a study of the situation, rendered a written opinion on the subject as to the rights of such aged policyholders. This opinion was delivered to Meyer and a consultation was had between him and both respondents on the subject. Thereafter Meyer decided the

expense of litigation would be too great for his mother or any one policyholder and conceived the plan of organizing a group of such policyholders, to be known as the Security Benefit Equity Association, and Meyer employed both respondents to represent that association or group in testing in court the rights of its aged members.

The commissioner found that the respondents agreed to lend their assistance to the equity group and to accept fees collected in the manner described for the organization of the equity group. Meyer then proceeded, as the commissioner found, to appoint soliciting agents in Nebraska, Missouri, Oklahoma and Kansas, and did thus add to the membership of the equity group many such aged members and ex-members of the Security Benefit Association, and collected fees from most of such members, and gave a portion of such fees to these respondents. Such fees so paid to the respondents were between $400 and $500 and were equally divided between the respondents. The commissioner further found that the respondents, through their association with Meyer, and with full and complete knowledge of the purposes, plans and methods of the Security Benefit Equity Association, have consented to and given their assistance to that association, the principal purpose of which was to institute litigation, and that no such litigation on behalf of said equity association or any of its members has yet been instituted.

There is, of course, a plain distinction between the respondents' representing the equity association under such circumstances and its individual members subsequently acquired. The respondents in their briefs claim they were representing Meyer and the equity association, but some of the evidence shows that they apparently regarded the newly acquired members as their clients, as the commissioner found.

There can be no question but that the commissioner was right in holding under these very peculiar circumstances that there was a breach of professional ethics, but we are compelled to conclude from the origin of the relationship and the course which the matters subsequently pursued without agency, as alleged, and simply with a knowledge of the purposes, plans and methods and a consent thereto, that such breach was merely technical, and developed as time went on merely through or because of an ill-considered zeal of the respondents for the peculiar situation of their client or clients, and since there is nothing in the record to indicate respondents previously enjoyed anything other than a good reputation, we have concluded

that while the evidence disclosed a technical violation of the rules of professional ethics, it is not of sufficient gravity to require suspension or disbarment. Justice will not miscarry by ordering judgment in favor of the respondents. It is so ordered.

THIELE, J., not sitting.